MARION L. CARROLL AND ANNE L. LANGDON, PLAINTIFFS, *v.* THE NEW YORK LIFE INSURANCE AND TRUST COMPANY, DEFENDANT.

*Bulk-head rights — a claim for their value substituted — it does not pass by a deed of lands under water.*

A trust deed conveyed certain property in the city of New York, together with all the right and title to the land and "lands under water in front of said premises;" such right had originally included certain bulk-head rights, but before the execution of the trust deed the maker thereof had entered into a stipulation with the city, in an action then pending against the city for an injunction and to recover possession of the bulk-head which it had wrongfully appropriated, which stipulation provided that if a judgment should be recovered against the city the question of damages and the value of the premises was to be reserved and ascertained as the court should direct.   This was afterwards done and the value of the bulk-head rights was fixed.

*Held*, in construing the trust deed as between the maker and trustee, that the effect of this stipulation, and the subsequent proceedings in the action in which it was made, was to divest the title of the maker of the trust deed to the bulk-head rights, as of the date of the appropriation by the city.

That the bulk-head rights of the maker then ceased to exist, and a claim for their value was substituted therefor.

That such claim was personal property and was not appropriately described by the words "land or lands under water" used in the deed, and that, consequently, the damages recovered from the city on such claim were not included in, and did not pass by, the trust deed.

SUBMISSION of a controversy upon an agreed statement of facts, without action, under section 1279, etc., of the Code of Civil Procedure.

*Ogden & Beekman,* for the plaintiffs.

*R. S. Emmet,* for the defendant.

O'Brien, J. :

It appears from the submission that on the 29th of September, 1876, and for many years prior thereto, the plaintiffs were owners of the wharf and bulk-head on the westerly side of West street in front of certain lots of land belonging to them on the easterly side of said street, and of the rights of wharfage arising from the said wharf and bulk-head, and that on September 29, 1876, the city of New York, by its department of docks, wrongfully took possession of said bulk-head and commenced to fill in with solid filling the space between the same and the new exterior line, thereby excluding the plaintiffs from the possession and enjoyment of the said wharf and bulk-head. Thereupon, and on the 1st of February, 1877, an action was commenced by the plaintiffs in this court against the city and the department of docks, to recover possession of the wharf and bulk-head and of the plaintiffs' easements therein, and for an injunction, but the city continued to fill in the space in question, and by May 23, 1878, had entirely appropriated the plaintiffs' rights and easements in the said bulk-head, and deprived them of the possession thereof and destroyed such easements.

Thereafter, on February 6, 1878, and on the trial of the action on the 29th of May, 1878, two stipulations were entered into between the parties reciting the fact of the filling in of such space, and providing that, in the event of the plaintiffs being entitled to judgment, the question of their damage by reason of the acts of the defendant, and the question of the value of the plaintiffs' premises were to be reserved and ascertained as the court should direct. The plaintiffs were finally successful in the Court of Appeals, and a judgment on the remittitur was, on the 12th day of October, 1883, entered in accordance with the terms of the stipulation. By an interlocutory order or judgment a reference was accordingly ordered to take proof of the value of plaintiffs' property and of the damages sustained by plaintiffs in being deprived of their bulk-head rights, and it was finally adjudged, upon the report of the referee, that the plaintiffs should recover from the city of New York, for principal and interest, the

sum of $81,400, being "the value of the premises" at the time of appropriation of the said property by the mayor, etc., "to wit, the 23d day of May, 1878." It was by such judgment directed that, upon receiving such payment, the plaintiffs should execute to the city a deed of their interest in the bulk-head and rights in question. A deed was accordingly prepared by the plaintiffs; and in addition thereto the city required a release from the defendant trust company of any interest which the latter might have in the property as trustee under certain deeds of trust executed by the plaintiffs to such trust company on January 20, 1885, and the 19th of November, 1886, conveying to the trust company, upon the trusts therein set forth, certain real and personal property particularly described. Included in such conveyances were the lands formerly owned by John Jacob Astor, and which, under his will, passed to the plaintiffs, appurtenant to or part of which were, as originally devised, the wharf and bulk-head and plaintiffs' easements therein, which were involved in the litigation with the city, and out of which the amount of money which is now the subject of dispute herein arose.

The separate deeds of trust made by each of the plaintiffs of the property owned by them to the defendant contain the same provisions and conditions, calling for the application of the entire income, after the payment of necessary charges for taxes and administration, to plaintiffs for life, and upon the death of the life tenant the trust was to cease and determine, and the property to go to such persons or corporations as the life tenant by last will and testament should direct; and providing further, in the event of intestacy, for a transfer to the children of the life tenant, if such there were, and in the event of no children, the trust estate to go to the right heirs of the life tenant, according to the statutes of descents and distributions of the State of New York.

The fund being on deposit with the trust company to abide a decision, we are asked to determine the questions submitted, which are as follows:

(1.) Are the plaintiffs entitled to the said moneys as recovered by them and deposited in the trust company?

(2.) Did any right or claim to said moneys pass to or vest in the said defendant, the New York Life Insurance and Trust Company, by virtue of the aforesaid deeds of trust?

(3.) Is the defendant, as trustee under said deeds of trust, entitled to hold or retain the said moneys or any part thereof?

These three can be reduced to the single question, whether the bulk-head rights, formerly owned by the plaintiffs, or their claim against the city for the value of such rights, were included in the deeds of trust to the defendant.

Such bulk-head rights are included in the property which, under the will of Astor, passed to the plaintiffs, and in the deeds of trust to the defendant. Describing this particular property in question by metes and bounds, there was added to the description these words: "Together with all the right and title of John Jacob Astor, deceased, to the land and lands under water in front of said premises."

Notwithstanding the force and weight to be attached to such language, it is insisted that the defendant can have no claim to the moneys in question, because the plaintiffs, by force of their stipulations with the city, abandoned their claim to the property in specie, and changed their demand into one for damages for its appropriation. That thereby they elected to take a pecuniary consideration from the city for the property instead of the property itself, and that the legal effect of this was that the city became possessed of the property in question as of the date of its appropriation, viz., May 23, 1878; and, therefore, the title of the plaintiffs was divested as of that date, and simultaneously the claim of the plaintiffs became one for its value; and thus an interest which had been real estate thereupon became transmuted into personal property.

We are of opinion that this position of the plaintiffs should be sustained. It is true, as noticed, that the deeds from plaintiffs to the defendant, in terms, convey more than the lots fronting on West street, and if the bulk-head rights had existed at the time of the execution of those deeds, there can be no doubt that they would have passed to the defendant. If, however, the bulk-head rights had then ceased to exist and the claim for their value had been substituted, the language used in the deeds would not have been appropriate to vest in the defendant the damages recoverable in the action. Such a right would be a chose in action, and, unquestionably, in character, personal property, and such property and rights would not be appropriately described by the words "land or lands

under water." The record, notably the interlocutory judgment and the stipulations, shows that the bulk-head rights were destroyed by the act of the city long prior to the execution of the deeds of trust, and the plaintiffs, therefore, had no property of that description to convey. What was left to them was a claim for damages which they were to recover in lieu of any bulk-head rights which, in 1878, they may have possessed.

Whatever doubt might otherwise arise as to the character of their claim prior to the decision by the Court of Appeals, it was settled by the judgment entered upon the remittitur in 1883 — prior to the deeds of trust to the defendant — which judgment provided that the plaintiffs should recover against the city for damages suffered by them by reason of the acts of the city in unlawfully appropriating their property; such damages to be ascertained in the manner the court should direct, in accordance with the stipulation between the parties and which formed a part of the judgment-roll.

Viewed in the light of the stipulations and the judgment, we think that the position of the parties may be well likened to that of persons who had entered into an executory contract for the sale of lands. It has been frequently held that the effect of such an executory contract is to change the position of the seller leaving him, instead of a title to the lands proposed to be sold, simply a claim to the amount stipulated to be paid. Such claim, being personal property, would not be appropriately described by the words "land or lands under water," which were the words used here. Or if we have resort to another illustration furnished by the numerous decisions in elevated railroad cases, it will afford another argument to support the plaintiffs' contention. In those cases, wherein the elevated railroads had unlawfully entered into possession of the property of others and had destroyed easements appurtenant to such property and where a possessory action had been brought, as here, asking for an injunction to restrain the unlawful interference with the plaintiffs' rights and easements, we think it clear, if in such an action the parties should stipulate to substitute a claim for damages, or if by the judgment damages were awarded in lieu of a decree restoring the rights and easements to the plaintiff and enjoining the railroad from trespassing thereon, that the effect of such a stipulation or such a judgment would be to change the character of the

rights involved in the action from an interest which had been real estate into a claim for damages, which would be personal property.

Here, the effect of the stipulations and of the judgment was to finally determine the transfers of the easement and bulk-head rights as of the date of May 23, 1878, and the right of the plaintiffs was thereafter to receive a money compensation therefor as of the same date. It being, therefore, reasonably free from doubt that the bulk-head rights owned by the plaintiff were destroyed, and a claim for damages substituted, prior to the trust deeds to the defendant, the plaintiffs not having such bulk-head rights, could not, at the date of the deeds to the trust company, have conveyed them. The personal property given to the defendant by plaintiffs was particularly described, and did not include such claim for damages, or any claim involved in the suit between the plaintiffs and the city; and the case submitted shows that the defendant's claim is based solely upon the force and effect to be given to the words in the deed already adverted to, at the end of the description of the lots on West street, "together with all the right and title of John Jacob Astor, deceased, to the land, and lands under water in front of said premises."

Among the statements agreed upon in the case submitted, we find the following:

"That the said trust company has never claimed nor considered, nor did the said Marion L. Carroll or Anne L. Langdon ever consider or intend that the said trust company, by reason of such conveyances by them to it, should acquire any right, title or interest in any rights of plaintiffs in said bulk-head, or in the said easements, or in their claim for damages against the mayor, aldermen and commonalty of the city of New York, by reason of any of the matters aforesaid; and that the said trust company has never taken any part in said action against said the mayor, aldermen and commonalty of the city of New York, and the board of the department of docks, nor been substituted, or made any claim to be substituted as plaintiffs therein since the creation of said trusts, but that said action was conducted from the commencement thereof until the final judgment therein by the said plaintiffs only."

This, undoubtedly, is a practical construction of the terms of the trust deeds placed thereon by the acts of the parties, to which some force should always be attached, and such construction is favorable

to the plaintiffs' view that the claim against the city, which was substituted for the interest they formerly had in the lands, ante dated the deeds to the trust company, and was not included therein.

We think that, upon the submitted case, the question should be answered favorably to the plaintiffs who, in accordance with the terms of the submission, should have judgment in their favor against the defendant for the sum of $83,582.08 and interest.

Van Brunt, P. J., and Follett, J., concurred.

Judgment ordered for plaintiffs against the defendant for the sum of $83,582.08 and interest.